LOTTINGER, Judge.
This action was brought under the General Maritime Law by Herman Ray Roberts, to recover damages against Tidex, Inc., alleged to be the owner and/or operator of a motor vessel named Grand Tide on which plaintiff was a passenger. The Lower Court awarded judgment in favor of plaintiff, Herman Ray Roberts, and against the defendant, Tidex, Inc., in the sum of $46,607.39 together with legal interest from date of judicial demand until paid and for all costs and further awarded out of said sum to Aetna Casualty and Surety Company, the compensation insurer of plaintiff’s employer, Service Contracting, Inc., the sum of $5,122.81, representing sums paid by it for plaintiff’s account. The defendant has filed this appeal.
Defendant filed third party actions against Service Contracting, Inc. and John N. Felps, respectively plaintiff’s employer and supervisor. These actions were dismissed on motion for summary judgment and those dismissals have not been appealed.
Plaintiff’s suit was originally filed under the “General Maritime Law and the Warranty of Seaworthiness,” alleging as fault defendant’s failure to provide him with a *511 safe means of egress from the M/V Grand Tide, and the suit was amended to alternatively include negligence under General Tort Law. Defendant, Tidex, Inc., denied plaintiff’s allegations and pleaded the additional defenses of contributory negligence, comparative negligence, assumption of risk, last clear chance, the fellow-servant doctrine, and limitation of liability. In finding for plaintiff, the Lower Court applied General Maritime Law.
Plaintiff, Herman Ray Roberts, injured his left foot and ankle on or about December 10, 1967, while disembarking from the M/V Grand Tide. He was a passenger on said vessel which was en route to the Texaco Landing in Morgan City, Louisiana. The M/V Grand Tide, before reaching the Texaco Landing, stopped at the Texaco Oil Dock, also in Morgan City, for refueling, and it was at the Texaco Oil Dock that plaintiff was injured.
The Findings of Fact of the Trial Court as contained in its Reasons for Judgment are very comprehensive, and we herein quote them:
“The evidence establishes that the plaintiff was an employee working as a cook for his employer, Service Contracting, Inc. on a drilling platform in navigable waters (i. e., the Gulf of Mexico). The evidence establishes that the plaintiff and other co-employees were brought ashore as passengers by the vessel ‘Grand Tide’, owned, operated and controlled by Tidex, Inc. The evidence also establishes that the weather in the early morning hours of the day when they were brought ashore was damp, foggy, and somewhat overcast. It was further established that the plaintiff and other Service Contracting Company, Inc. employees had worked long hours before disembarking from the ‘Grand Tide’ at the Texaco dock on the east bank of the Atchafalaya River near Morgan City, St. Mary Parish, Louisiana.
“The evidence also establishes that the vessel on which plaintiff and other co-employees were riding (i. e., ‘Grand Tide’) pulled up alongside of some pilings which were located in front of the Texaco dock itself, and was there made fast. It was established by the evidence that the pilings were away from and separate from the dock. (See photographs marked D-2, D-3, and D-4, court file).
“It was further established that at approximately 2:00 o’clock A.M. on the above date, after the vessel had been made fast, all of Service Contracting, Inc.’s employees disembarked from the vessel at the Texaco dock. It was also established that most (or all) of Service’s employees disembarked from the vessel by getting onto the cluster of pilings, and then jumping onto the dock which lay alongside of the vessel.
“It was further established that the plaintiff had no notice, knowledge, warning, or reason to know or believe that the ‘Grand Tide’ was intended to be docked anywhere but at the Texaco dock where they disembarked. It was established that the plaintiff got off of the vessel in the same manner (i. e., by getting onto the pilings and jumping off onto the dock) as did his co-employees.
“The evidence conclusively established that Tidex, Inc. and its employees, representatives, agents, etc. furnished no gangway or device of any sort for the plaintiff and his co-employees to disembark from the vessel onto the Texaco dock which is customary.
“The testimony of the Captain of the vessel (Captain Maronge) and the engineer (Mr. Buquet) proves conclusively that there was no gangway or other device on the vessel (or elsewhere) to disembark from it at the time of this accident. Captain Maronge also testified that he did not give any information, at any time, to anyone either before or on December 10, 1967, of any dangers or risks involved in disembarking in the manner in which Service Contracting Inc.’s employees did at the Texaco dock.
“It was further established by the evidence that nothing whatsoever was done by *512 the vessel’s officers or crew (or anyone else in the defendant’s employ) to warn the plaintiff and the other passengers on the ‘Grand Tide’ of the dangers and risks of disembarking at the fuel dock. It also established that no warnings were given any of them not to disembark where they did. Nor did the plaintiff and his co-employees receive any instructions about how or where to disembark from the captain or the crew or any help or aid whatsoever in leaving the vessel. They got off of the vessel at the only place where it stopped in the manner that their combined judgments told them was the safest and best way. A review of the photographs will indicate that quite clearly and obviously the pilings which lay between the side of the vessel and the dock materially and substantially lessened the distance one had to move from the vessel to the dock when the pilings were used as an intermediate point from which to get ashore.”
Under the General Maritime Law the defendant owed a duty of reasonable care to the plaintiff and his fellow employees as passengers on its vessel. See Kermarec v. Compagnie Generale Transatlantic, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. See also, Nygren v. American Boat Cartage, Inc., 290 F.2d 547 (2nd Cir. 1961) on the duty of reasonable care. The Lower Court found that Tidex, Inc. owed a duty to plaintiff and his co-employees to furnish a means to disembark from the vessel, to instruct and advise them when, where and how to descend, to clear a landing area, and to assist and admonish them. From the above facts, the Lower Court found that defendant breached this duty, and we concur.
In finding that plaintiff was not contributorily negligent, the Lower Court pointed out that since all, or nearly all, of the passengers disembarked in precisely the same manner, at the same location, it must be concluded that their combined judgments indicated to them that this was the safest and best manner of disembarking from defendant’s vessel at the only place afforded them. Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff’s harm. Restatement of Torts 2d, Section 463. The standard of conduct to which a person must conform for his own protection is that of a reasonable man under like circumstances. See Henson v. Travelers Insurance Company (La.App., 1st Cir., 1969) 228 So.2d 667, and authorities cited therein. We agree that from the facts before us plaintiff was not contributorily negligent.
The defendant also raised defenses of assumption of risk,' no right or cause of action, last clear chance, the fellow-servant doctrine, and comparative negligence, all of which we find to be without merit. In addition, defendant pleaded limitation of liability but introduced no evidence whatsoever to place a value on the vessel, Grand Tide, and her pending freight. Hence, this defense cannot be considered and is without merit.
On the day following the accident plaintiff saw his family physician, Dr. Gerald J. Elias of New Iberia, Louisiana, who diagnosed the plaintiff’s injuries as a severe sprain of the left ankle with swelling, limitation of movement and motion, and pain. Dr. Elias’ early treatment consisted of splinting and bandaging the sprained ankle and prescribing anti-inflammatory drugs to reduce the swelling.
Dr. Elias referred the plaintiff to Dr. James Gilly, an orthopedic surgeon of Lafayette, Louisiana. Dr. Gilly examined plaintiff some four times in 1968. A reading of the deposition of Dr. Elias and the medical reports of Dr. Gilly which were filed in evidence indicates that these doctors concluded that the plaintiff’s foot and ankle injuries were superimposed upon a congenitally high arched foot, short *513 hamstrings, and complicated by a circulatory ailment. They concurred in the opinion that the plaintiff could not stand or work long hours on his feet and was permanently disabled as a cook.
The defendant had the plaintiff examined in February of 1968 by Dr. R. C. Grunsten, an orthopedic surgeon of New Orleans who found that the plaintiff had objective signs of foot and ankle injury but that he should become ambulatory in two to three weeks thereafter.
Dr. Elias saw, examined and treated the plaintiff throughout the course of his injury, right up to the trial of this matter. Dr. Gilly saw the plaintiff some four times and had more than adequate opportunity to evaluate his condition. It requires no recitation of legal authority in stating that it is well settled that the law of Louisiana favors the testimony of the treating physician and a specialist who has seen an injured patient a number of times during an extended period of time over that of a physician who has seen a patient only briefly.
Defendant argues that the plaintiff’s present disability is unrelated to.the injury in question, but that it is solely the result of the plaintiff’s high arched foot, short hamstring and a circulatory ailment, all of which are unrelated to trauma.
The testimony of plaintiff establishes that he had no trouble whatsoever with his feet, ankles, etc. before this accident. Courts are often faced with situations where traumatic injuries are superimposed upon pre-existing but dormant and inactive medical conditions. Quite often, as appears to be the case here, the injured parties are unaware of such conditions. Subsequently the condition becomes active, and the combination of the pre-existing but dormant conditions and the injuries superimposed upon them combine to permanently cripple the victim. The Lower Court concluded this to be the case here, and we do not find this interpretation of factual evidence to be manifestly erroneous.
In evaluating the plaintiff’s damages, the Lower Court recognized that plaintiff was 58 years old at the time of the accident. From this and other evidence the Lower Court concluded that plaintiff, who was a cook, suffered loss or diminution of earnings and earning capacity for a period of seven years from the date of the accident. With this in mind and with evidence as to plaintiff’s previous earnings and possible future earnings as an oyster opener and newspaper vendor, the Lower Court awarded damages for lost earnings and earning capacity in the sum of $39,-107.39.
In addition, plaintiff suffered, and was suffering, considerable pain and discomfort in his foot and ankle from his injuries. The medical evidence showed that the pain would continue into the indefinite future. The Lower Court awarded the sum of $7,500.00 for the pain and suffering of plaintiff.
These two amounts, $39,107.39 and $7,-500.00, total $46,607.39, and this represents the sum of the judgment awarded plaintiff.
Defendant submits that, “an award of more than $46,000.00 for a sprained ankle is clearly excessive.” This would normally be true. However, in this case we have found that a sprained ankle was superimposed on conditions which had not previously bothered plaintiff, and this permanently disabled plaintiff to carry on his employment as a cook. There is much authority in Louisiana law on the point that a tort-feasor is responsible for aggravation of a pre-existing condition since he must take his victim as he finds him. We recently so held in Kinchen vs. Hansbrough (La.App., 1st Cir., 1970) 231 So.2d 700. We believe the estimate of the Lower Court of lost earnings and earning capacity, as well as the award for pain and suffering, to be a fair one.
*514 • For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.