393 So.2d 304 (1980)
Ross H. ROBERTSON, Individually and on Behalf of his minor Daughter, Janice Dianne Robertson
v.
Samuel TRAVIS et al.
No. 13700.
Court of Appeal of Louisiana, First Circuit.
December 15, 1980.
Rehearing Denied January 26, 1981.
*306 L. B. Ponder, Jr., Amite, for plaintiff-appellee.
Johnnie A. Jones, Baton Rouge, for defendant-appellant Samuel & Charles Travis.
Roy L. Wood, Amite, for defendant-appellant Mrs. Olevia Webb.
Leonard Yokum, Dist. Atty., Amite, for defendant-appellant St. Helena Parish School Bd.
*307 Duncan S. Kemp, III, Hammond, for defendant-appellant Travelers Ins. Co.
Jesse Lagarde, Amite, for defendant-appellant Employer's Ins. Co.
Iddo Pittman, Jr. & Alton Lewis, Hammond, for defendant-appellant State Farm Ins. Co.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
Plaintiffs Ross Robertson and Janice Dianne Robertson[1] appeal from a judgment rendered in favor of all defendants. The trial judge did not assign reasons for the judgment.
On December 7, 1966, Janice Robertson, age 9 years 11 months, was a passenger in Olevia Webb's station wagon. Mrs. Webb was employed by the St. Helena Parish School Board as a bus driver. She used her privately owned station wagon to transport several children to and from school in Greensburg, Louisiana. The light bluegreen 1963 Chevrolet station wagon was not marked as a school bus in any way.
The Webb vehicle was headed south on the Montpelier-GreensburgRoad (La. Hwy. 43) and stopped approximately 3 miles south of Greensburg to allow Janice Robertson to get out of the car to go home. Janice lived down a gravel lane on the opposite side of the road so it was necessary for her to cross Highway 43 to reach her house. Testimony taken by deposition showed Mrs. Webb stopped in the right hand lane at the top of a hill opposite the gravel road. Her right wheels were slightly off the road and she applied her emergency brake and her left turn indicator. She testified she saw no cars in the rear view mirror so proceeded to get out of the car to escort Janice across the road. Janice exited from the front right door and walked around the front of the car to meet Mrs. Webb. Mrs. Webb stated in her deposition she was standing at her open front left door, crossing flag in her hand, and was about to walk Janice across the highway when a car being driven by Samuel Travis appeared suddenly from the rear. The Travis car was also traveling south on Highway 43 and was attempting to pass the stopped Webb vehicle. Mrs. Webb stated there was no time for her to do anything but jump back into the car to avoid being hit by the Travis car. Janice, obviously confused and frightened, attempted to cross the highway alone. As she crossed the left lane she was struck by the Travis car. Janice survived the accident but was seriously injured.
Testimony at trial and by depositions showed Janice remained unconscious for 25 days. She was hospitalized for seven weeks with her body in a cast from the chest down. Her left leg was broken which has caused one leg to be slightly shorter than the other, resulting in a permanent limp. She also suffered from a concussion at the time of the accident and complains today of a seriously weakened left arm. Janice testified she feels she is mentally slower than her peers and that she found school to be so difficult she dropped out in the seventh grade.
Plaintiff filed suit against the following parties: Olevia Webb and her husband Pete Webb;[2] Webb's insurer, Employers' Liability Assurance Corporation, Ltd.; St. Helena Parish School Board and its insurer Travelers Indemnity Company; and Charles Travis (Samuel's father) as the administrator of his minor son's estate. Plaintiff also made a claim against his own insurer, State Farm Mutual Automobile Insurance Company, to recover damages cause by any uninsured motorist.
The procedural delays in this case are phenomenal. Although the accident occurred in late 1966, numerous continuances resulted in such delay that the trial did not take place until ten years later, in September of 1976. The testimony taken at the 1976 trial was never transcribed and the *308 record indicates the court reporter may have lost her notes. Due to the lack of the transcript, plaintiff obtained a retrial in May of 1978. Because 12 years had elapsed since the accident the witnesses were obviously not able to recall the facts with as much detail as would have been desired. This is particularly true of the several witnesses who were children at the time of the accident. Fortunately for the fact finder, depositions of several parties taken in 1968 and in 1970 were admitted into evidence. Judgment was rendered in favor of all defendants and against plaintiff. Plaintiff has appealed. Since there are numerous defendants in this suit we will discuss separately the issues concerning each.

NEGLIGENCE OF SAMUEL TRAVIS
The issue concerning Travis is whether or not his behavior fell below the standard of reasonable care. We find the trial court was not clearly wrong in rendering a judgment in favor of Samuel Travis. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), rehearing denied 1979. Travis testified he saw the Webb vehicle come to a stop and he observed Mrs. Webb standing by the side of the car. He stated he did not see anyone other than Mrs. Webb emerge from the vehicle. His contention that he did not see Janice Robertson is quite credible in that his view of the child standing in front of the car would be blocked by the vehicle itself. The Webb car was not marked in any way to indicate to Travis that the car was transporting school children. He testified he did not know Mrs. Webb and was unaware of her employment as a driver of school children.
The trial judge apparently found Travis acted reasonably in slowing his car to 40 or 45 miles per hour as he proceeded to pass the Webb vehicle. Travis saw the Webb vehicle was stationary and would not be turning left (in spite of the blinking left turn indicator). It would be reasonable for him to assume that Mrs. Webb, an adult, would not cross the road while he was passing. Since Travis' view of the child was blocked by the Webb vehicle, he had no reason to anticipate that a child would dart from in front of the car into his lane of traffic. A motorist who is driving at a lawful and reasonable rate of speed and who is obeying rules of the road as to proper lookout will not be held liable when a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. Anderson v. Janes, 234 So.2d 238 (La.App. 2d Cir. 1970).
Certainly we would be compelled to reach a different result if the station wagon had been marked as a school bus, for then Travis would have been under a duty to anticipate children would be likely to emerge from the vehicle. There are numerous statutes and jurisprudential rules governing the standard of care of drivers approaching a marked school bus, but because this car was not marked none are applicable to Travis.
For the foregoing reasons, the judgment in favor of Samuel and Charles Travis is affirmed.

NEGLIGENCE OF MRS. WEBB
The issue presented in this part of the case is whether or not Mrs. Webb breached the duty of care owed as a driver of school children. She knew her vehicle was being used as a school bus and is therefore held to the standard of care imposed upon school bus drivers. We find the trial court committed manifest error in not finding a breach of the duty owed by Mrs. Webb and that the breach was a cause of the accident. We, therefore, reverse that portion of the judgment.
School bus drivers have been likened to common carriers and although they are not insurers they must exercise the highest degree of care for their passengers. Sepulvado v. General Fire and Casualty Co., 146 So.2d 428 (La.App. 3d Cir. 1962), cert. denied 1963. Landry v. Travelers Indemnity Co., 155 So.2d 102 (La.App. 1st Cir. 1963). We find the evidence shows Mrs. Webb breached this high degree of care.
Her initial act of negligence was stopping the vehicle in the highway. La. R.S. 32:141 provides in part:

*309 "A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
The record reflects Mrs. Webb's car was only slightly off the highway. We find she could have pulled the car further off the road or she could have turned left onto the gravel road which led to Janice Robertson's house. There is no reason why she had to stop on the highway, leaving the car obstructing the southbound lane of traffic. This maneuver was made even more dangerous by the fact that she stopped the car at the top of a hill.
We are aware that it is a general practice for school busses to stop in the road to unload children. However it is one thing for a clearly marked school bus, equipped with appropriate lights, signals and signs, to stop in the highway and quite another thing for a plain blue-green station wagon to stop in the highway. Although Mrs. Webb knew her car was being used as a school bus and is therefore held to the higher standard of care, there was nothing to indicate to other drivers the vehicle was transporting children. We feel this lack of notice to other motorists imposes an even greater duty upon Mrs. Webb to take extreme care in her unloading procedures. Since the car was unmarked, approaching drivers would not anticipate that children would be emerging from the vehicle. Because the car appeared to be a regular passenger vehicle rather than a school bus, we feel Mrs. Webb was required to observe the usual safety rules applicable to ordinary automobiles, such as La.R.S. 32:141.
The violation of La.R.S. 32:141 is negligence per se and if this negligence is the legal cause of the accident it is actionable. Piggly-Wiggly Operators' Warehouse, Inc. v. Commercial Union Ins. Co., 174 So.2d 207 (La.App. 2d Cir. 1965), writ denied 1965. A motorist who parks his car on the traveled portion of the highway is a prima facie violator of this statute and in order to avoid liability for damages resulting therefrom, it is incumbent upon the violator to affirmatively show why it was necessary for him to have so parked his vehicle. Odom v. Texas Farm Products Co., 229 So.2d 118 (La.App. 2d Cir. 1969). The record shows Mrs. Webb offered no explanation as to why she had to park her car on the traveled portion of the highway. Janice Robertson lived on a gravel road directly opposite the place where Mrs. Webb stopped the car. Mrs. Webb testified at a deposition that she chose to drop Janice off on the highway, rather than turning into the gravel road, simply because she wanted to stay ahead of the other school busses that were behind her car.
The second aspect of Mrs. Webb's negligence was her failure to see what she should have seen after she stopped the vehicle. The dangerous situation she created by stopping in the highway required she use the utmost care in her procedure of unloading the children. She knew she was obstructing the highway by stopping her unmarked vehicle at the top of the hill. She testified she looked in her rear view mirror but did not see any cars approaching from the rear. It is conceded the position of her car, atop a hill, may have made it difficult for her to see the Travis car in the mirror. Nonetheless, as a driver of school children she was under a duty to make absolutely certain no cars were coming from behind before allowing any children to exit the car.
There is evidence in the record indicating her vision may have been blocked by certain things in the rear of the station wagon. Mrs. Webb testified she was carrying laundry in baskets in the third section of the car but that the baskets weren't tall enough to block her vision. L. K. Travis, a passenger *310 in the Travis car, testified he saw "hog slop" cans in the auto and that these cans prevented him from seeing the children's heads through the rear window. Gary Meridy, another passenger, said he saw large garbage cans in the rear of the station wagon. Tall cans would certainly have impaired the vision of the driver in determining whether or not a car was coming from behind.
In Mire v. LaFourche Parish School Board, 62 So.2d 541 (La.App. 1st Cir. 1952), a seven year old child was struck by a car as she attempted to cross the road after alighting from a school bus. This court found that the bus driver had breached his duty to ascertain whether or not it was safe for the child to cross the highway. As a whole we find Mrs. Webb's behavior fell well below the standard of care required of a school bus driver. We feel her actions are the proximate cause of Janice's injuries. Under a duty-risk analysis it can easily be said Mrs. Webb had the duty to stop the car in a safe place and to make sure no vehicles were coming from behind, precisely to avoid the risk of a car striking a child as the child crossed the road.
We have no trouble finding Mrs. Webb to be on a community mission at the time of the accident. She was in the course and scope of her employment and any money earned would belong to the community. La.Civ.Code art. 2402.[3] Therefore, her husband, as head and master of the community, is vicariously liable for her torts. Gauthier v. Henry, 255 So.2d 378 (La.App. 1st Cir. 1971); Hill v. Benoit, 358 S.2d 326 (La.App. 4th Cir. 1978).
For the above reasons, the trial court's judgment in favor of Olevia and Pete Webb is reversed.

CANCELLATION OF THE EMPLOYERS' POLICY
Employers' allege the insurance Policy on Mrs. Webb's 1963 Chevrolet wagon was cancelled as of December 4, 1966. Mrs. Webb contends she received no notice of cancellation and was not aware she was uninsured until she reported the accident to her insurance agency (Carter's Insurance Agency) the day after the accident. The issue is whether or not Employers' notice of cancellation was effective so as to render Mrs. Webb without coverage as of the day of the accident. We note the trial court did not have to reach this issue because it found Mrs. Webb to be free of negligence. Therefore, we do not have the benefit of simply determining whether or not the trial court was clearly wronginstead we must make a de novo determination from the facts presented in the record. Although there is conflicting evidence on this issue we find the record shows it is more probable than not Mrs. Webb did not receive notice of the cancellation. Therefore, we reverse the trial court's judgment in favor of Employers'.
The policy in dispute (# E93-649355) was to be in effect from January 29, 1966 to January 29, 1967. At a deposition in April of 1970, Prentiss Carter, owner of Carter Insurance Agency, produced several documents concerning the policy. One such document was a letter from Employers' Ruston office informing Carter that Mrs. Webb's policy was going to be cancelled because she had filed two claims within one year. The letter stated if Carter did not return the policy to Employers', they would assume he wanted them to forward the "Registered Notice of Cancellation" directly to the assured. Mr. Carter also produced the original and two copies of the notice of cancellation written by Employers. The notice was dated November 23, 1966 and states that Mrs. Webb's insurance will be cancelled as of December 4, 1966. Mrs. Webb's name and address appears on the right hand side of the paper, Carter Insurance Agency's name and address is on the left hand side.
La.R.S. 22:636 sets forth the requirements of notice for an insurer cancelling a policy. The statute provides "Written notice, *311 of such cancellation must be actually delivered or mailed to the insured or to his representative ... not less than five days prior to the effective date of cancellation." There have been many cases dealing with the interpretation of this statute. Prior to 1973 the trend had been that proof of mailing was considered proof of cancellation.
This trend was reversed in Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). The court noted the purpose of notice of cancellation was to inform the insured his policy was being terminated and to allow him sufficient time to obtain other insurance. The court stated the language of the statute, "actually delivered or mailed to the insured" was subject to two interpretations. The first interpretation would be the language means the simple depositing of the notice in the U. S. mails, addressed to the insured. The court noted it was somewhat unfair to say this act alone conclusively terminated coverage. The second interpretation of the language is that "mailed to the insured" means a completed process, the transmission of the notice through the U. S. mails. The court adopted the latter definition and held that under this interpretation affirmative proof of non-delivery renders the notice ineffectual.
Therefore, in order to successfully prove cancellation Employers' must show the notice was actually mailed to the insured. In order to defeat cancellation the insured must prove she did not receive the notice. We cannot say conclusively that Employers' proved that the notice of cancellation was mailed to Mrs. Webb. (The notice was obviously mailed to Carter because they possessed the original and two copies.) There was no testimony by deposition or at trial by any employee of the Employers' Ruston office concerning the mailing of the notice. Freddie Carter, Prentiss Carter's brother and employee, testified the insurance company usually mails the original notice of cancellation to the insured and mails the copies to the agency. He could not, however, explain how the original was put into his files. He stated he assumed Mrs. Webb brought the original to his office, but he had no personal recollection of her doing so. Although it is tempting to assume Mrs. Webb received the original and brought it to the agent's office, she denies receipt of the notice and there is simply no evidence supporting this conclusion.
There is an exhibit in the record that appears to be some sort of a receipt showing that one piece of ordinary mail was sent from the Employers' Ruston office to Mrs. Webb at her address. The receipt is stamped by the Ruston post office on November 23, 1966. Because there is no accompanying explanation concerning this receipt, we are unable to evaluate its importance. It is obviously not a receipt for a piece of registered or certified mail. We note there is a place on the cancellation notice for the employee mailing the notice to sign his name, stating the notice was mailed on a certain date. This part of the notice is left blank.
Regardless of whether or not the above evidence proves the notice was mailed to Mrs. Webb we find the record shows Mrs. Webb has adequately proven she did not receive notice of the cancellation.
We are impressed by three factors which lead us to conclude Mrs. Webb did not receive notice of cancellation. The first piece of evidence is her unequivocal testimony that she did not receive the notice of cancellation. Her testimony taken by deposition in April 1970, was as follows:
"Q. Now, were you sent a notice of cancellation by Employers' Group?
A. I don't remember
Q. On or about November the 23rd, 1977?
A. I don't remember getting any.
Q. Could you have gotten it without remembering it?
A. I didn't get any.
Q. It is your testimony that you did not get any?
A. That is right.
Q. Did you have an occasion to talk with Mr. Prentiss Carter after November *312 23, 1966 in regards to your
A. No sir.
Q. Insurance?
A. No sir.
Q. You did not see Mrs. (sic) Carter in regards to your receiving a Notice of Cancellation from the Employers Insurance Company?
A. No sir.
. . . . .
"Q. I show you what purports to be a photostatic copy, which is designated Notice of Cancellation, addressed to Mrs. O. E. Webb, Route 1, Amite, Louisiana and ask you if you ever received the original of that copy?
A. Just like that, absolutely not.
Q. Did you receive anything similar to this?
A. No.
Q. You have never received anything from the Employers Assurance Corporation?
A. No sir."
The only evidence offered to refute her denial of receipt of notice was a statement by Frederick Carter that he recalled talking to Mrs. Webb about the cancellation sometime before the accident. A careful examination of his deposition reveals his testimony is vague and somewhat self-contradictory on this matter. Counsel questioned Mr. Carter concerning Mrs. Webb coming to his office as follows:
"Q. Do you recall whether or not this meeting between you, Mrs. Webb and your secretarywhether it took place prior to December 7th, 1966 or after December 7th, 1966?
A. I remember this much, specifically, that we discussed the cancellation prior to the accident, what date, I don't remember."
At another point during the deposition Frederick Carter responded to questions on the same subject as follows:
"Q. Did you have occasion to talk to Mrs. Webb that day?
A. Well, if she was in there, I am sure I did.
Q. Do you recall whether this was before the accident of December 7th, 1966?
A. When was the accident?
Q. December 7th, 1966?
A. Yes sir, yes sir. Well, I am going this is assumptiongoing by the date of the cancellation. The notice is sent out prioryou have to give the assured ten days notice and the date of cancellation on here is on the 4th.
Q. And it is your recollection that Mrs. Webb came to your office prior to the accident?"
(At this point appellant's counsel objected to the question. The question was not answered.)
After carefully studying the entire deposition we conclude Frederick Carter's testimony concerning when Mrs. Webb came into his office is something less than definite. It must be remembered that almost four years had passed from the time of the alleged cancellation and the time of the deposition. We feel Mrs. Webb's testimony is more certain on the matter.
The second factor which persuades us that Mrs. Webb has shown she did not receive the notice is that no one can explain how Carter came into possession of the original of the notice. Mrs. Webb firmly stated she had never seen the notice and she did not bring it to the insurance agency. There is no evidence to refute her statements. Frederick Carter admitted he had no personal recollection of Mrs. Webb bringing the notice to the agency. He could only say he assumed she had done so, because the customer usually receives the original. He conceded it was possible the original was sent by error to the agency rather than to Mrs. Webb.
The third factor that influences our findings is a subtle but significant situation. Frederick Carter testified his theory was that Mrs. Webb received the original notice from Employers' and came to his office *313 prior to the accident to discuss the cancellation of her policy. If this were the case, why did Carter Insurance do nothing to obtain more insurance for Mrs. Webb until after the accident? It seems logical that if Mrs. Webb was aware she was soon to be uninsured, she would have instructed the agency to apply for other insurance in her behalf. Yet nothing was done to obtain more insurance until after Mrs. Webb called the office on December 8, 1966 and found her policy had been cancelled.
The very fact she called the office to report her accident can be taken as an indication she believed she was insured. Such a call would have been a futile effort if Mrs. Webb had known her policy had been cancelled. We feel the Carters' absence of action to reinsure is an indication Mrs. Webb had not previously come to their office to discuss the cancellation. This fact, coupled with the fact there was no explanation as to how the original notice came into Carter's possession, indicates it is more probable than not Mrs. Webb never received notice of cancellation.
For these reasons, the judgment in favor of Employers' Liability Assurance Corporation Limited is reversed. Employers' is cast for the full amount of their policy limits ($5,000), plus legal interest from date of judicial demand.

CONTRIBUTORY NEGLIGENCE OF JANICE ROBERTSON
Appellees State Farm and Employers' urge Janice Robertson should be barred from recovery because of her contributory negligence. We concede if Janice had been an adult her behavior would be characterized as being below that behavior required by a reasonable adult in the same circumstances. It is well settled that a child of nine or ten years old may be guilty of contributory negligence. Jones v. Firemen's Insurance Co. of Newark, 240 So.2d 780 (La.App. 2d Cir. 1970), writ refused 1970. However, it is also well established the contributory negligence of a child is not measured by the same standard of care as an adult, but only by the self-care expected of a child of similar age, intelligence and experience, under the particular circumstances of the case. Dufrene v. Dixie Automobile Ins. Co., 373 So.2d 162 (La.1979), on remand for issue of quantum 376 So.2d 507 (La.App. 4th Cir. 1979), writ refused 378 So.2d 1390 (1980).
Appellees cite Jones v. Firemen's, supra, for the proposition that a child of ten years is contributorily negligent when crossing a highway into the path of an oncoming car. The facts of Jones are similar to the instant case in that a child almost ten years old exited a car from the right hand lane of the highway and crossed the highway to reach her house. She was struck by an oncoming car as she attempted to cross. The court held the child was contributorily negligent because the evidence showed she was an extremely bright child and was familiar with the dangers of the highway. She had lived in the same house all her life and had crossed this highway in the same manner innumerable times.
The facts of the present case are distinguishable from Jones. There is no evidence in the record that Janice Robertson was a bright child. The evidence shows she was a less than average student, as illustrated by the fact she was in the third grade for three consecutive years and dropped out of school in the seventh grade. The most significant difference in the two cases is the relationship between the driver and the child. In Jones the driver was a friend of the family with no special duty or obligation to help the child cross the road. The child was accustomed to crossing the road alone and was used to relying upon her own judgment in crossing safely. Mrs. Webb, however, occupied the status of a school bus driver and had an extraordinary duty to see that the child crossed the road safely. Janice had lived in the area for only three weeks and was just beginning to become familiar with the procedure of crossing the highway. As a student under Mrs. Webb's supervision she was accustomed to relying upon Mrs. Webb's instructions in crossing the road, rather than upon her own judgment. Unlike the Jones child *314 who was on her own from the moment she emerged from the car, Janice was completely dependent upon Mrs. Webb's guidance in crossing. Mrs. Webb had initiated the unloading procedure and was supervising Janice's crossing at the moment of the accident. We find under these facts, Janice Robertson was not contributorily negligent.
We realize the determination of contributory negligence is a difficult inquiry. Because there were no reasons for judgment we do not know if the trial court found Janice to be contributorily negligent or if the court found the defendants to be free of negligence. Any uncertainties about Janice's contributory negligence can be settled by the "sudden emergency doctrine." The doctrine is based upon the theory a person confronted with a sudden emergency (not of his own making) is not held to the same degree of care as when he has time for reflection. LaCour v. Continental Southern Lines, Inc., 124 So.2d 588 (La.App. 1st Cir. 1960). This rule has been applied to a plaintiff's behavior so that it is appropriate to consider a sudden emergency when evaluating contributory negligence. Hickman v. Southern Pacific Transport Company, 262 So.2d 385 (La. 1972), rehearing denied 1972.
In this instance Janice found herself faced with a sudden emergency. She was a young child accustomed to relying upon the instructions of her driver while crossing the road. She was instructed to get out of the car and understood Mrs. Webb would get out with her flag and escort her across the road. As the crossing procedure was about to take place Janice became aware of a car bearing down toward her. She saw her driver suddenly jump back into the car and close the door, leaving her quite alone on the highway near the path of the oncoming car. Mrs. Webb's action of jumping back into the car indicated to Janice that danger was imminent. Faced with this emergency she panicked, moved in the wrong direction, and was struck by the car. This behavior is certainly not what one would expect if there had been time for cool reflection. Yet the law does not expect one to exercise the same degree of judgment in an emergency where his personal safety is threatened as would be expected in a situation where he is not subject to the fear of sudden disaster. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (La.1956). Because of the emergency situation, we feel Janice's behavior should not bar her recovery.

STATE FARM'S UNINSURED MOTORIST COVERAGE
The issue presented here is whether or not appellant is entitled to recover from State Farm Mutual, his uninsured motorist carrier. Appellant's petition sought recovery from State Farm in the event any of the responsible defendants were uninsured motorists.
Defendant Samuel Travis is an uninsured motorist but has been found not negligent so there can be no recovery based on his actions. The other motorist, Mrs. Webb, is insured. Although La.R.S. 22:1406 was amended in 1972 and 1974 to allow an insured to collect from his uninsured motorist coverage for damage caused by an "underinsured" motorist, this amendment has been held to have prospective application only. Walker v. Landry, 336 So.2d 951 (La.App. 3d Cir. 1976), Smith v. State Farm Mutual Automobile Ins. Co., 328 So.2d 679 (La.App. 3d Cir. 1976). Since the accident occurred in 1966 appellant cannot take advantage of the underinsured motorist provision. Therefore, appellant is not entitled to recover from his uninsured motorist carrier.
For these reasons, the judgment in favor of State Farm Mutual is affirmed.

LIABILITY OF ST. HELENA PARISH SCHOOL BOARD

Sovereign Immunity
The issue that concerns us here is whether or not the School Board is immune from suit. We find it is not. The doctrine of sovereign immunity was abrogated in Board of Commissioners of Port of New Orleans v. Splendour Shipping and Enterprises Company, Inc., 273 So.2d 19 (La. 1973), rehearing denied 1973. The court *315 reasoned in that case the doctrine of sovereign immunity was jurisprudentially created rather than constitutionally created. The court held "... the Board of Commissioners of the Port of New Orleans, and other such boards and agencies, are not immune from suit for tort."
The theory of Splendour was made a part of the 1974 Constitution. Art. XII, § 10 proscribes immunity as to the state, state agencies and political subdivision for suit and liability in contract and tort. In 1975 the Supreme Court was faced with the issue of whether or not the abolition was effective for causes of action arising prior to the effective date of the 1974 constitution, which is midnight of December 31, 1974. La.Const. art. XIV, § 35. In Darville v. Associated Indemnity Corporation, 323 So.2d 441 (La.1975), the court refused to allow the Department of Corrections to plead governmental immunity, even though the cause of action arose in 1972, prior to the effective date of the 1974 constitution.[4]
This court, in Muse v. St. Paul Fire and Marine Insurance Company, 328 So.2d 698 (La.App. 1st Cir. 1976), held the Department of Health and Human Resources could not claim governmental immunity, even for a cause of action arising prior to the effective date of the 1974 constitution. The same decision was made concerning a defendant school board in Genusa v. Krulee, 305 So.2d 752 (La.App. 4th Cir. 1974). The jurisprudence clearly establishes the St. Helena Parish School Board cannot claim to be immune from suit.

Direct Negligence of the School Board
Plaintiff alleges direct negligence of the school board in failing to comply with statutes requiring certain markings on school busses. La.R.S. 32:318 requires school busses to be marked with certain lights and colors. La.R.S. 32:1 defines a school bus as a motor vehicle designed to carry more than ten people. The record shows Mrs. Webb's car was a nine passenger station wagon. Her vehicle does not fit the definition of a bus and is therefore not required to meet the standards set forth in La.R.S. 32:318.
For this reason, we find no direct negligence on the part of the School Board.

Vicarious Liability
Appellant alleges the School Board is vicariously liable for the torts of its employee, Olevia Webb. La.Civ.Code art. 2320. In order to establish vicarious liability it must be proven a master-servant relationship existed and the tortious act was committed within the scope and during the course of the employment. St. Paul Fire & Marine Insurance Co. v. Roberts, 331 So.2d 529 (La.App. 1st Cir. 1976).
There is no dispute that Mrs. Webb was an employee of the St. Helena Parish School Board. She so testified and this fact was not questioned during discovery or during trial. The evidence clearly established Mrs. Webb was within the scope and course of her employment when the accident occurred. She was employed as a school bus driver and at the precise moment of the accident she was supervising a child leaving the school bus and crossing the highway.
We find the School Board to be vicariously liable and for the foregoing reasons the judgment in favor of the School Board is reversed.

LIABILITY OF TRAVELERS
The only issue as to Travelers is whether or not an exclusion in the insurance policy absolves them from any liability for the negligence of the St. Helena Parish School Board or its employees. An endorsement to the policy reads as follows:
"The insurance applies to the transportation hazard except in connection with watercraft, automobiles or aircraft owned, operated or hired by or for the insured or any officer, employee or member of the teaching, supervising or administrative staff of the insured. For the *316 purpose of this paragraph the word `hired' shall be deemed to include any contract to furnish transportation of pupils to and from school."
The endorsement is clear and requires no further discussion. The policy obviously does not cover injuries that arise out of the transportation of pupils to and from school. We therefore affirm the judgment in favor of defendant Travelers Insurance Company.

QUANTUM
Because the trial court found plaintiffs were not entitled to recover from any defendant it did not address the issue of quantum. The record supports an award of $1,133.80 for plaintiff, Ross H. Robertson, and an award of $35,000 for plaintiff, Janice Dianne Robertson. These sums, for medical expenses and for personal injuries, are to bear legal interest from date of judicial demand. We note The Charity Hospital of Louisiana at New Orleans has previously made demand upon Ross H. Robertson for all but $55.00 of the amount awarded him for the medical expenses which he incurred as a result of his daughter's injuries. If its demand has not been satisfied, Robertson is obligated to reimburse the hospital out of amounts paid to him by the judgment debtors.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the trial court insofar as it dismisses plaintiffs' demands against Samuel Travis, Charles Travis, State Farm Mutual Automobile Insurance Company and Travelers Indemnity Company; and, we reverse that part of the judgment rendered in favor of Olevia Webb, Pete Webb, Employers' Liability Assurance Corporation, Ltd., and the St. Helena Parish School Board.
Judgment is now rendered in favor of plaintiff, Ross H. Robertson, and against the defendants, Olevia Webb, Pete Webb, Employers' Liability Assurance Corporation, Ltd., and the St. Helena Parish School Board, in solido, for the sum of $1,133.80, plus legal interest thereon from date of judicial demand, until paid.
Judgment is further rendered in favor of plaintiff, Janice Dianne Robertson, and against the defendants, Olevia Webb, Pete Webb, Employers' Liability Assurance Corporation, Ltd., and the St. Helena Parish School Board, in solido, for the sum of $35,000, plus legal interest thereon from date of judicial demand, until paid.
The liability of Employers' Liability Assurance Corporation, Ltd. for the sums awarded plaintiffs is limited to its policy limits.
Costs are assessed one-third to Olevia and Pete Webb; one-third to Employers' Liability Assurance Corporation, Ltd.; and onethird to the St. Helena Parish School Board, subject to any applicable statutory exemptions.
AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.
NOTES
[1] When this suit was initially filed Janice Robertson was a minor. When she became of age she joined the suit as a proper party plaintiff.
[2] Plaintiff alleged that Mrs. Webb was on a community mission at the time of the accident.
[3] Art. 2402 has now been replaced by art. 2338 as a part of the revision of the matrimonial regime law.
[4] The court so held in spite of La.Const. art. XIV, § 33, which says the waiver is effective only for causes of action arising after the effective date.