437 So.2d 933 (1983)
Dennis L. GARSEE, Plaintiff-Appellee,
v.
WESTERN CASUALTY & SURETY COMPANY, INC., Defendant-Appellant.
No. 15542-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
Writ Denied November 4, 1983.
*934 Paul B. Wilkins, Columbia, for plaintiff-appellee.
Davenport, Files & Kelly, by Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
Before JASPER E. JONES, FRED W. JONES, and NORRIS, JJ.
JASPER E. JONES, Judge.
This is an action for damages due to personal injuries suffered in a water skiing accident. After a trial on the merits, the district judge rendered a judgment in favor of the plaintiff, Dennis L. Garsee, and against the defendant, Western Casualty and Surety Company, Inc., for $25,000, the insurer's policy limits. Western appeals and we affirm.
Garsee was injured on September 7, 1980. He was skiing behind a boat owned and operated by "Pete" Shipp, Western's insured, when Shipp suddenly made a sharp turn and accelerated causing a powerful jerk on the tow rope which literally flipped Garsee. The plaintiff's right knee was seriously injured from being wrenched as his ski left and then struck the water.
Garsee brought this action against Shipp's insurer but Shipp was not made a party to the action. Western answered and raised the defenses of assumption of the risk and comparative negligence as well as denying any negligence by its insured.
The trial judge found that the accident occurred as described above and that Shipp was negligent. He further found that Garsee had not assumed the risk and that he was not contributorily negligent.
*935 The trial judge fixed Garsee's damages at $25,428.49 and rendered judgment in his favor for that amount. Western moved for a new trial on grounds that the judgment exceeded its policy limits. The judgment on the motion for new trial limited the insurer's liability to $25,000.
Western then appealed setting out one primary assignment of error and four alternative assignments. Western contends the trial judge erred in:
1) finding Pete Shipp negligent;
2) failing to find that Garsee had assumed the risk;
3) failing to find Garsee contributorily negligent and apply the doctrine of comparative negligence;
4) awarding excessive damages; and
5) failing to find that Garsee had declined to mitigate his damages.
Assignment 1
Western suggests that Garsee has not proved that Shipp was negligent and alludes to the conflict in the testimony. The plaintiff's witnesses, Garsee and his wife, testified that the accident occurred as previously described. The defense witnesses testified in substance that there was no accident.
The trial judge found the Garsees to be the more credible witnesses and that the accident occurred in the manner they described. We are in accord with the trial judge's evaluation of credibility and note that the record provides no basis upon which we could disturb his evaluation even if we were so inclined.
Our inquiry now is whether Shipp was negligent in making a sharp turn and accelerating, so as to produce a powerful jerk on the two rope, while pulling a skier. We conclude, as did the trial judge, that he was.
Negligence is the breach of a duty to another to protect him from the particular harm that ensued. Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1976).
The operator of a motorboat towing a waterskier is under a statutory duty to operate the boat in a careful and prudent manner. R.S.34:850.15C. This duty extends in favor of both passengers and skiers.
We find Shipp's operation of his boat in such a manner as to produce a very powerful jerk on the tow rope to have been a breach of his statutory duty to Garsee. The trial judge correctly found that Shipp was negligent. Shipp's negligence was a cause in fact of Garsee's injuries.
This assignment of error has no merit.
Assignment 2
Western argues that Garsee assumed the risk of being jerked when he did not release the tow rope upon observing slack in the rope.
Assumption of the risk is an affirmative defense and the burden of proving assumption of the risk rests upon the defendant. Dofflemyer v. Gilley, 384 So.2d 435 (La.1980).
In order to assume the risk one must knowingly and voluntarily encounter the risk which caused him harm and he must understand and appreciate the risk involved and accept the risk as well as the inherent possibility of danger from it. McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975); Dofflemyer v. Gilley, supra.
The determination of whether a plaintiff has assumed a particular risk is made upon a subjective inquiry into his appreciation of that risk. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir.1977).
The record shows that moderate jerks on the tow rope as a result of turns creating slack are a normal and expected part of water skiing. Dennis Garsee is an experienced skier and he had encountered and continued to ski through such normal jerks on many occasions. Garsee expected the jerk he experienced while skiing behind Shipp's boat to be a typical jerk of normal magnitude.
*936 Instead, because of the combination of Shipp's sharp turn and acceleration, the jerk he actually encountered was an extremely powerful jerk of far greater intensity than those attendant to normal maneuvers. The record does not support the conclusion that Garsee subjectively understood or appreciated the extreme nature of the jerk to which he was exposed by Shipp's negligence. Garsee had no reason to anticipate the sudden increase of speed that created the tremendous jerk that brought about his accident and injury.
In light of Western's failure to prove the assumption of the risk the trial judge properly rejected this defense. This assignment of error is without merit.
Assignment 3
Western contends that Garsee was guilty of contributory negligence in failing to release the tow rope when he saw slack in it. The defendant concludes that under the doctrine of comparative negligence, see C.C. art. 2323, Garsee's negligence should be fixed at 90% and any award of damages reduced by that factor.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Cambridge Mut. Fire Ins. v. State Farm, Etc., 405 So.2d 587 (La.App. 3d Cir.1981); Roberts v. Tidex, Inc., 251 So.2d 509 (La.App. 1st Cir.1971), writ refused, 259 La. 905, 253 So.2d 224 (1971).
Contributory negligence is a question of fact upon which the trier of fact's determination will not be disturbed on appeal absent manifest error. Chaney v. Cunningham, 411 So.2d 519 (La.App. 1st Cir. 1982); Cambridge Mut. Fire Ins. v. State Farm, Etc., supra; Marshall v. Biggs, 392 So.2d 111 (La.App. 1st Cir.1980), writ refused, 394 So.2d 1244 (La.1980); Martin v. State, Department of Highways, 322 So.2d 827 (La.App. 3d Cir.1975).
One who finds himself confronted with a sudden emergency, not of his own making, is not guilty of negligence because he fails to adopt what, upon reflection, may appear to have been a better course. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Wilson v. Kelly, 138 So.2d 837 (La.App. 2d Cir.1962). The existence of a sudden emergency is an appropriate factor to consider when determining contributory negligence. Kaplan v. Missouri-Pacific R. Co., 409 So.2d 298 (La.App. 3d Cir.1981); Robertson v. Travis, 393 So.2d 304 (La.App. 1st Cir.1980), writs denied, 397 So.2d 805, 806 (1981); Hickman v. Southern Pacific Transport Company, supra.
A water skier who knew he was about to encounter a jerk of the magnitude encountered by Garsee and did not release the tow rope to avoid the jerk would be contributorily negligent. If Garsee should have known of the magnitude of the forthcoming jerk then his failure to release the tow rope was contributory negligence. However, the record indicates, as the trial judge found, that the accident "happened quickly and without warning." The circumstances surrounding the accident, particularly its sudden occurrence and unusual nature, do not indicate that a reasonable man in such a situation should have known that he would be subjected to a powerful jerk.
The trial judge was not clearly wrong in finding that Garsee was not guilty of contributory negligence. This assignment of error lacks merit.
Assignment 4
Western contends that the trial judge awarded excessive damages.
Garsee was injured on the afternoon of September 7. He was unable to sleep that night because of the pain and before dawn the next morning he sought medical attention at a hospital emergency room.
Garsee's physician, Dr. H.H. Winters, III, gave him medication for pain and nausea. Dr. Winters aspirated 10 cc's of blood from Garsee's severely swollen right knee.
Dr. Winters saw Garsee again on September 10, 1980, and on that occasion aspirated *937 25 cc's of fluid from the injured knee. He gave Garsee an injection for pain and nausea medication. Dr. Winters then referred Garsee to Dr. Sidney L. Bailey, an orthopedic surgeon.
Dr. Bailey saw Garsee on September 11, 1980. He diagnosed Garsee's injury as a significant, and possibly complete, tearing of the medial knee ligaments and damage to the medial knee cartilage. Bailey recommended immediate surgery to repair the ligaments, however, Garsee declined because of an extreme fear of surgery. Bailey placed Garsee's knee in a cast and instructed him to perform exercises to maintain the muscle strength in his damaged right leg.
The cast was removed after four weeks and Garsee was instructed to continue his exercises and to bear no weight with his injured leg. Dr. Bailey released Garsee to return to work on November 4, 1980. Dr. Bailey considered Garsee to have a 20-25% disability of his right knee at the time he was released.
Garsee testified that he had experienced much pain from his injury. He stated that his knee is often stiff and painful in the morning. He detailed the pain and difficulty he encounters on his job due to his injury. He testified that the pain is often aggravated by physical activity and that his knee often swells.
Our initial inquiry when reviewing an award of damages must always be directed at whether the award for the particular injuries and their effect upon the particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Considering the effect of this severe injury on this plaintiff the award made by the trial judge is not excessive. Instead, it appears somewhat low, however, the trial judge may not have fixed damages at a higher level because even those found by him exhausted Western's policy limits.
This assignment of error has no merit.
Assignment 5
Western argues that the award of damages should be reduced because of Garsee's failure to mitigate his damages by undergoing surgery. Western contends that Garsee is entitled to no damages in excess of those he would have suffered had he undergone the recommended surgery.
An injured party is obligated to submit to reasonable medical treatment, including surgery, to minimize his damages against a tort feasor; however, the burden is on the defendant to show to what extent damages should be mitigated. Reeves v. Travelers Insurance Company, 329 So.2d 876 (La.App. 2d Cir.1976).
Dr. Bailey, who testified by deposition, stated that the prognosis would have been excellent had Garsee undergone ligament repair surgery within two weeks after the accident. He was less sanguine about the prospects for success of ligament reconstruction surgery performed more than two weeks after the accident.
Bailey explained that in a repair surgery, which he recommended to Garsee, the damaged ligaments can be reattached or sutured back together. He stated that ligament repair surgery cannot be performed more than two weeks after the accident and that past that time surgery would be for reconstruction. He explained that in reconstruction surgery the remaining undamaged ligaments are rearranged around the knee to provide greater support for the joint.
Bailey gave some specific testimony as to the cost of and convalescent period following reconstruction surgery. He did not specifically testify about these factors with respect to repair surgery but from the totality of his testimony it appears that the cost and period of convalescence would be similar for both.
The trial judge awarded Garsee $18,000 for pain and suffering. No lesser amount would have been appropriate had Garsee undergone the pain and suffering associated with surgery and a minimum recovery period of six months. Had Garsee undergone the recommended surgery he would *938 have been entitled to recover its cost which would have been at least $2,000 and lost wages for a minimum of six months in the amount of $5,626.40. Thus, even had Garsee undergone surgery as recommended he would have been entitled to damages in the amount of at least $25,626.40, a figure in excess of Western's policy limits.
As Garsee's damages would. have exceeded Western's policy limits even had he undergone the recommended surgery, Western is not entitled to any reduction in the judgment by reason of his failure to do so.
This assignment of error lacks merit.
The judgment is affirmed at appellant's costs.
AFFIRMED.