486 So.2d 974 (1986)
Dewey Luke DUPLANTIS
v.
FARM BUREAU INSURANCE COMPANY.
No. 84 CA 1477.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Barry Boudreaux, Houma, for plaintiff and appellee.
William Porteous, III, New Orleans, for defendant and appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Defendant appeals from a judgment awarding plaintiff damages for personal injuries sustained as a result of an accident aboard a sport fishing vessel while trawling for shrimp.
On or about May 20, 1981,[1] plaintiff, Dewey Duplantis, his brother, Alvin Duplantis, and Jerry Chabert were trawling for shrimp in Lake Barre south of Montegut, Louisiana. The boat which they were occupying was a 19' fiberglass Laffite skiff *975 owned by Alvin and insured by defendant, Louisiana Farm Bureau Casualty Insurance Company. It was established at trial that while Chabert steered the vessel, plaintiff and Alvin stood at the picking box in the rear of the boat separating the shrimp from the rest of the catch. The deck area where plaintiff was standing lacked any type of non-skid surface, having been worn smooth through time and use. During the course of the trip, water and slippery substances accumulated on the rear deck near the picking box. Just prior to the time of the accident, Chabert was cruising directly into the water's swells. As the seas began to get somewhat rougher, he attempted to turn the boat in order to travel with the seas. While in the process of making this turn, a wave hit the side of the boat, causing plaintiff to lose his balance. Once off balance, plaintiff's foot slipped on the worn and slippery surface of the deck, falling against an ice chest and scraping his shin. As a result thereof and due to a pre-existent venus insufficiency condition, plaintiff's wound became badly infected, subsequently requiring surgery.
On November 17, 1982, plaintiff filed suit naming only Louisiana Farm Bureau Casualty Insurance Company as a defendant. In his suit, plaintiff alleged that Alvin was negligent in failing to put down a non-skid substance on the deck that he knew or should have known was slippery; in failing to warn plaintiff that the picking box was spilling a slippery substance on the deck; and in failing to install hand rails near the picking box.
Following trial on the merits, judgment was rendered in favor of plaintiff, awarding him $8,972.61 for medical expenses and $30,000.00 for pain and suffering. In his written reasons for judgment the trial court stated:
Plaintiff alleges he is entitled to recover from the boat owner's insurer because of the owner's negligence in failing to maintain his boat in a safe condition. Plaintiff presented evidence that the deck of the boat was worn smooth and was not covered by any materials which prevented persons from slipping. It is entirely foreseeable that the deck of a boat will become slippery with shrimp and debris from the sea. The boat owner breached a duty to his passenger when he failed to guard against the risk of slipping, especially during rough weather. The board owner's negligent maintenance of his boat was a cause in fact of the plaintiff's injury. He is 100% liable to plaintiff, since there was no negligence on plaintiff's part.
From this judgment defendant has appealed alleging the following specifications of error:
I. The trial court erred in holding that the owner and/or operator of a sport fishing vessel is responsible for a fall occasioned by a wave striking the vessel.
II. The trial court erred in failing to reduce the award to the plaintiff because of his failure to follow the instructions of his treating physician.
It is defendant's contention that the owner of a pleasure craft should not be responsible for falls which are caused by waves striking the vessel. In support of this contention defendant cites numerous cases dealing with unexpected or sneaker waves striking vessels and injuries to passengers as a result of the wave action. We do not find these cases to be controlling here since they are distinguishable on two grounds. First, this is not a situation where there was a sneaker or unexpected wave striking the boat. It was well established at trial that at the time of the accident, the seas had gotten somewhat rougher and that all three persons aboard the boat were aware of the sea's condition. The simple fact that plaintiff may not have actually seen this particular wave does not put this case in the category of those dealing with sneaker waves. Second, this is not a situation where injuries were caused by the wave action. Rather, the injury complained of by plaintiff was caused by the unreasonably slippery condition of the deck of the boat.
*976 It was established at trial and the trial court found that the deck of the boat at the time of the accident was worn smooth and was not covered with any material which would prevent persons from slipping. Additionally, the record reveals that during the course of picking the shrimp, fish slime and other slippery substances accumulated on the deck, thus adding to an already precarious condition. Furthermore, plaintiff testified that he was not an experienced shrimper and had only gone trawling three or four times prior to this incident. Finally, the testimony of plaintiff and his brother, Alvin, the only eye witnesses[2] to the accident, reveal the actual cause of plaintiff's fall. In response to questions at trial concerning the incident, Alvin testified as follows:
"I was out there trawling at Seabreeze, Lake Barre, and while we were cleaning the shrimp, the wave hit the side of the boat and threw my brother off balance and he slid and he hit his leg on an ice chest."
Similarly, plaintiff, when asked by defense counsel to explain what happened stated:
"Well I was back of the boat, back by the picking box, I was picking shrimp and then a wave hit the side of the boat and I lost my balance and then my foot slipped and hit the ice chest."
It is clear from the record that but-for the wave striking the boat, plaintiff would not have lost his balance. However, it is equally clear that but-for the condition of the deck, plaintiff would not have slipped and injured himself. Applying the "but-for" test to determine cause-in-fact clearly results in a finding that the unreasonably slippery condition of the deck was the cause-in-fact of plaintiff's injuries. See Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980).
However, a determination of cause-in-fact does not necessarily result in liability. Having determined causation, we must also determine if there was a duty imposed on the defendant and whether the risk which caused the accident was within the scope of that duty. Dunne v. Orleans Parish School Board, 463 So.2d 1267 (La.1985).
It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care toward those lawfully aboard the vessel who are not members of the crew. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Gibboney v. Wright, 517 F.2d 1054 (5th Cir.1975). This principle has been applied by this court in finding that the owner and/or operator of a motor vessel owned passengers a duty of reasonable care. Roberts v. Tidex Inc., 251 So.2d 509 (La.App. 1st Cir.), writ denied, 259 La.905, 253 So.2d 224 (La.1971). See also Strickland v. Nutt, 264 So.2d 317 (La.App. 1st Cir.), writ denied, 262 La.1124, 266 So.2d 432 (1972).
In the case sub judice, it is undisputed that this was not a commercial venture, but rather a pleasure trip. Alvin Duplantis testified at trial that they were out catching shrimp for his niece, Anna Chabert. Therefore, plaintiff was clearly within the class of passengers to whom the duty to exercise reasonable care was owed. The only determination left to be made is whether or not that duty was breached.
The trial court found that Alvin did breach his duty owed plaintiff by failing to guard against the risk of slipping. The record shows that the deck was worn smooth and not covered with any non-skid material. This fact, coupled with the normal spillage which occurs when trawling, presented an unreasonable risk of harm under the circumstances. It was easily foreseeable that an accident of this nature could occur. By failing to take any steps to prevent it, defendant's insured breached the duty of reasonable care owed to his passengers and is therefore liable under the duty-risk analysis.
*977 Defendant also contends the amount awarded to plaintiff should be reduced due to the fact that plaintiff failed to follow medical instructions. It is defendant's position that by failing to follow the prescribed treatment, plaintiff slowed the healing process and in effect failed to mitigate his damages.
It is a well established rule that the trial court is granted much discretion in the awarding of damages, and its determination will not be disturbed absent manifest abuse of that discretion. Before a damage award may be questioned as inadequate or excessive, the appellate court must look to the individual circumstances of the particular case to determine whether the award was a clear abuse of the trier of fact's great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
It is equally well established that a tort feasor takes his victim as he finds him, and is responsible in damages for the consequences of his tort although damages so caused are greater because of a prior condition of the victim which is aggravated by the tort. Nolan v. Ochello, 433 So.2d 1100 (La.App. 1st Cir.), writ denied, 441 So.2d 210 (La.1983).
The record reflects that at the time of the accident, plaintiff suffered only a scrapped shin. Upon seeking medical assistance, he was diagnosed as having a stasis ulcer of the leg. Because of a pre-existing venus insufficiency condition, the wound failed to heal and eventually required surgery. Following a venus by-pass, circulation in plaintiff's leg was restored and the wound finally healed some two years after the accident.
Defendant's claim that plaintiff failed to follow the medical treatment was based on the testimony of plaintiff's treating physician, Dr. Herman Walker. Dr. Walker testified through deposition, that "plaintiff would almost get better, and then we wouldn't see him for a while and he'd come back and he'd be looking terrible, so we'd have to try to get the infection under control." Thus, defendant contends that by failing to keep his appointments, plaintiff perpetuated his injury.
At trial however, plaintiff testified that the reason he did not always keep his appointments was that he could not afford to pay for them. Plaintiff testified that he was no longer working, had only a little money in the bank, was not yet receiving social security, and that defendant was not paying his medical bills. Both plaintiff and his niece, Anna Chabert, testified that plaintiff, although not always reporting to the doctor, did in fact follow the treatment that was prescribed.
After reviewing the facts and circumstances of this case, we cannot say that the trial court abused its great discretion.
For the above and foregoing reasons, judgment of the trial court is affirmed. All costs of this appeal are to be assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] Both parties refer to the accident as having occurred on May 20, 1982. However, the record clearly reflects that the accident happened on or about May 20, 1981.
[2] Jerry Chabert testified that at the time of the accident he was looking toward the front of the boat while steering and did not see the accident.